UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLO FALCONE,

        Plaintiff,

v.                                Case No. 07-10665

                                Honorable Patrick J. Duggan

CITY OF WARREN,

        Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County of
Wayne, State of Michigan, on October 9, 2008.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Plaintiff Nicolo Falcone filed this employment discrimination lawsuit on February 14, 2007, alleging violations of the Americans with Disabilities Act, ("ADA"), 42 U.S.C. §§ 12101, *et. seq.*, and Michigan's Persons With Disabilities Civil Rights Act ("MPWDCRA"), M.C.L. §§ 37.1101, *et. seq.* Presently before this Court is Defendant's motion for summary judgment, filed April 15, 2008. Defendant's motion has been fully briefed, and a motion hearing was held on September 4, 2008. For the reasons set out below, this Court grants in part and denies in part Defendant's motion for summary judgment.

**Factual Background**

Plaintiff has been employed by the City of Warren since 1989. Plaintiff is blind in one eye, and is dyslexic. In 1997, Plaintiff became a permanent city employee in the Building and Maintenance division. Plaintiff was employed first as a janitor and then as a Building Maintenance Specialist. As an employee in the Building Maintenance Division, Plaintiff was a member of the American Federation of State, County, and Municipal Employees, AFL-CIO (AFSCME) Local 1250, and subject to the collective bargaining agreement between Defendant and Local 1250.

In August 2001, Plaintiff herniated his L4-5 disk in his back. Plaintiff underwent surgery to repair the disk, and on November 11, 2001, his doctor released Plaintiff to return to work, with restrictions. The restrictions were as follows: no repeated bending or twists, no lifting greater than 15 pounds, and the ability to sit or stand at will. According to Plaintiff, Defendant refused to return him to work because of his medical restrictions (Pl.'s Resp. Summ. J. Ex. 7.) Defendant again refused to return Plaintiff to work on January 2, 2002. (*Id.*) On January 7, 2002, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in which he alleged that Defendant had violated the ADA by refusing to return him to work and accommodate his medical restrictions by placing him on light duty. (*Id.*)

On February 7, 2002, Defendant responded to Plaintiff's allegations in a letter to the EEOC. Defendant stated that it was holding his position open for him and had offered him a promotion. Defendant further stated that Plaintiff was welcome to return to

work as soon as his medical restrictions were lifted.  Defendant denied that "light duty" existed for Plaintiff's position.  (Pl.'s Resp. Summ. J. Ex. 8.)  The EEOC later dismissed Plaintiff's charge because it was unable to conclude that Defendant had violated any statutes.

Plaintiff was subsequently reinstated in March 2002, after he was cleared to work without restrictions, and was promoted to Building and Grounds Maintenance Specialist on March 18, 2002.  However, over the next two months, Plaintiff suffered two work related injuries.  On April 4, 2002, Robert Pittman, Plaintiff's foreman, "accidentally bumped [Plaintiff's] chair over."  (Pl.'s Resp. Summ. J. Ex. 11.)  On May 6, 2002, Plaintiff slipped on wet grass as he exited a truck.  (*Id.*)  These injuries aggravated Plaintiff's L4-5 disk, and he underwent his second back surgery in August 2002.

On November 24, 2002, Plaintiff's doctor cleared him to return to work with the following restrictions: "no lifting greater than 15 pounds on an occasional basis," and no repetitive bending or twisting.  (Pl.'s Resp. Summ. J. Ex. 12.)  According to Defendant, Plaintiff returned to work at the end of November (Mot. Summ. J. p. 4).  Plaintiff presented Defendant with a second doctor's note on January 28, 2003, which also restricted Plaintiff from lifting anything greater than 15 pounds, bending twisting and instructed that Plaintiff needs to be able to sit or stand at will.  (Pl.'s Resp. Summ. J. Ex. 12.)  Plaintiff worked during 2003 with these restrictions, and Defendant asserts that it tried to accommodate him.  (Mot. Summ. J. p. 4.)

By December 2003, Plaintiff was still experiencing back pain and consulted a different surgeon, Dr. Easton. Dr. Easton recommended another back surgery, and excused Plaintiff from work until the corrective surgery could take place. Plaintiff had the back surgery, but did not return to work in 2004.

On January 1, 2005, Plaintiff received a letter from a union official reminding him that his supplemental pay, i.e. the difference between his worker's compensation and his base pay, and health benefits would expire on January 12, 2005. As a result, Defendant offered to extend Plaintiff's health benefits while he applied for disability retirement. At a meeting between Plaintiff and Defendant regarding disability retirement, Plaintiff asked whether he could return to work with a light duty assignment. Mark Simlar, a labor relations assistant for Defendant, informed Plaintiff that Defendant does not provide permanent light duty assignments. Plaintiff later filed for disability retirement. In his application, he stated that he was completely disabled from working. Plaintiff now asserts that he never believed he was permanently disabled, and only applied for disability retirement to extend his health benefits until he could return to work. (Pl.'s Resp. Mot. Summ. J. p 12.)

During 2005, Plaintiff's work restrictions remained essentially the same as they were in 2002-2003, although his lifting restrictions varied slightly. Plaintiff confirmed to Defendant on more than one occasion that his work restrictions were temporary.

After being examined by Defendant's doctor, who concluded that Plaintiff was not totally disabled, Plaintiff's disability retirement application was denied on September 28, 2005. Because Defendant denied Plaintiff's disability retirement application, Plaintiff has asked Defendant repeatedly to reinstate him. However, Defendant has refused to reinstate Plaintiff because of the medical restrictions imposed by Plaintiff's physician. Plaintiff is still restricted from lifting anything greater than 30 pounds, cannot perform repetitive bending and must be able to sit or stand at will. Plaintiff insists that these restrictions are temporary and his doctor expects that they would be lifted shortly after Plaintiff returned to work. Plaintiff's doctor will not lift the restrictions to allow Plaintiff to return to work on full duty; it is his practice to return patients to work on light duty and then lift the restrictions if warranted.

## Analysis

### I. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of

an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## II. Plaintiff's Disability Discrimination Claims

Defendant argues that Plaintiff's disability discrimination claims fail as a matter of law and, therefore, it is entitled to summary judgment. The ADA prohibits covered entities, such as public employers, from discriminating against an employee on the basis of disability, and requires covered entities to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).

6

Defendant contends that Plaintiff is not a qualified individual because, due to his back injury, he cannot perform essential functions of the janitor position. However, in the Complaint, Plaintiff states that his disabilities that qualify him under the ADA are: dyslexia, learning disabilities and blindness. (Compl. ¶¶ 58, 66.) Defendant's motion for summary judgment does not address these claims[1].

It is clear from the arguments presented at the hearing that Plaintiff's alleged disability or perception of disability relate to Plaintiff's back injury. Defendant does not dispute the fact that Plaintiff is asserting a "perception of disability" claim with respect to the back injury. However, Defendant argues that it is entitled to summary judgment on Plaintiff's ADA and MPWDCRA "perception of disability" claims.

An individual is considered "disabled" under the ADA if he (1) "has a physical or mental impairment that substantially limits one or more of the major life activities of such individual," (2) "has a record of such impairment," or (3) is regarded by her employer as having such an impairment. *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999); see also 42 U.S.C. § 12102(2)(A)-(C). The regarded as disabled provision protects employees who are "perfectly able" to perform a job, *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001), but are "rejected . . . because of the 'myths, fears and stereotypes' associated with disabilities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489-90, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (quoting 29 C.F.R. pt. 1630, App. §

---

[1] Plaintiff acknowledged at the hearing that he is not contending that these "disabilities" are the basis of his discrimination claims.

1630.2( l )). Accordingly, it applies when "(1) [an employer] mistakenly believes that [an employee] has a physical impairment that substantially limits one or more major life activities, or (2) [an employer] mistakenly believes that an actual, nonlimiting impairment substantially limits one or more [of an employee's] major life activities." *Id*. at 489, 119 S.Ct. 2139. Either application requires that the employer "entertain misperceptions about the [employee]." *Id.* Here, Plaintiff alleges that Defendant perceived him as disabled "based on his back injury as well as his learning disabilities, dyslexia and blindness." (Compl. ¶¶ 75, 86.)

Plaintiff disputes Defendant's claim that his "disability" prevented him from performing all of the tasks required of his job. Plaintiff contends that the deposition testimony of Dr. Tamler supports his contention that he is not restricted from doing the tasks generally required of his job. Plaintiff further contends that even when restricted to "light duty" he performed all of the duties of the job.

Plaintiff further points to other individuals who had similar medical restrictions but, in fact, were able to perform all of the duties required of plaintiff's job. Plaintiff further argues that he has never been classified as "permanently disabled" and contends that any restrictions are temporary.

Viewing all of the evidence presented in a light most favorable to Plaintiff, as this Court must do in evaluating a motion for summary judgment, this Court is not prepared to conclude, at this time, that Plaintiff cannot meet his burden of proof to show that he was discriminated against based on either "disability" or a "perception of disability."

8

The Court is, therefore, denying defendant's motion for summary judgment with respect to Plaintiff's "disability" or "perception of disability" claim.

If at the close of Plaintiff's proofs Defendant believes that Plaintiff has not offered sufficient evidence to allow the case to go to the jury, this Court is satisfied that Defendant will, at that time, make the appropriate motion.

Defendant also argues that there is no genuine issue of material fact that Plaintiff was not retaliated against for filing discrimination charges with the EEOC against Defendant. Specifically, Defendant alleges that Plaintiff cannot prove that he was not returned to work because of the EEOC charges he filed in 1997 and 2002. "In an action under Title VII, the plaintiff may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a prima facie case under the *McDonnell Douglas* framework." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) (referring to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Absent direct evidence of retaliation, as is the case here, retaliation claims are subject to the same *McDonnell Douglas* burden-shifting framework as discrimination claims. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563-64 (6th Cir. 2004). To establish a prima facie case of retaliation, Plaintiff has to show (1) he engaged in activity protected by the ADA, (2) Defendant knew he engaged in this activity, (3) Defendant subjected him to an adverse employment action, and (4) a causal connection exists

9

between the protected activity and the adverse employment action. *Singfield*, 389 F.3d at 563.

Defendant concedes that the first three elements are present here, thus the only dispute is whether Plaintiff has set forth a prima facie case of retaliation in regard to the fourth prong of the standard, which requires him to establish a causal connection between his EEOC filings and Defendant's refusal to reinstate him. A causal connection is established by the presentation of evidence "sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (quoting *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (citations omitted))

Plaintiff argues that there is a casual connection between his filing of his EEOC charges and Defendant's refusal to return him to work, even though the events are separated by a number of years. According to Plaintiff, Defendant waited to retaliate in an effort to disguise its motive. Plaintiff further argues that Defendant retaliated against him because of his close relationship with James Ospalski, a City of Warren employee who successfully sued Defendant and recieved a $1,000,000 jury award. Defendant argues that too much time passed between the EEOC charges and the adverse employment action for Plaintiff to establish a causal connection.

Plaintiff filed his first EEOC charge in 1997, after Defendant refused to hire him as a full-time employee, even though he had successfully passed the civil service exam.

The parties settled the matter, and Plaintiff became a full-time mechanic for the city. In 2002, after Defendant refused to reinstate Plaintiff following his back surgery, Plaintiff filed his second EEOC charge. In response, Defendant stated that it had not reinstated Plaintiff because of the work restrictions imposed by his doctor, but it was holding his position open for him. Once his work restrictions were lifted, Defendant reinstated Plaintiff and promoted him shortly thereafter. Eight years after Plaintiff's first EEOC charge, and three years after the second EEOC charge, in 2005, Defendant again refused to return Plaintiff to work after his third back surgery.

Based on the evidence, this Court holds that there is no casual connection between Plaintiff's EEOC charges and Defendant's refusal to return him to work. The time that passed between the events is too great. Also, the fact that Defendant returned Plaintiff to work when his work restrictions were lifted in 2002 shows that Defendant did not act with discriminatory animus when it refused to return Plaintiff to work in 2005, when his ability to work was restricted. Moreover, Plaintiff has failed to adequately explain why his relationship with Ospalski is relevant to his disability retaliation claim, or why his connection to Ospalski caused Defendant to discriminate against him for filing EEOC charges. For these reasons, Defendant's motion for summary judgment on Plaintiff's ADA and MPWDCRA retaliation claims are granted.

For the reasons set forth above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment with respect to Plaintiff's claims of disability or perception of disability with relation to the back injury are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to Count V (Retaliation in Violation of the ADA and MPWDCRA) is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Megan Bonanni
Karen B. Berkery
Lori N. K. Adamcheski
Timothy S. Groustra